**Booker ARCHIE, Petitioner,**

v.

**Wayne STRACK, Superintendent, Respondent.**

No. 02–CV–6120.

United States District Court, W.D. New York.

Feb. 17, 2005.

Booker Archie, Sonyea, NY, pro se.

## DECISION AND ORDER

BIANCHINI, United States Magistrate Judge.

## INTRODUCTION

Booker Archie ("Archie") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on two counts of third degree criminal possession of a controlled substance and two counts of third degree criminal sale of a controlled substance. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The conviction at issue in the present habeas petition stems from two drug buys that occurred in the City of Rochester on May 31, 1996, and June 14, 1996. On May 31, New York State Police Investigator Kimberly Smith ("Investigator Smith") was working undercover with Mike Cunliffe ("Cunliffe" or "the informant"), a confidential informant. Investigator Smith had been given $125 in pre-recorded buy money bills by the Rochester Police Department to facilitate the purchase of cocaine from Archie or a individual known as Hiram Hernandez.

At about 11:18 a.m. that morning, Investigator Smith and Cunliffe spotted Archie on Bay Street. Cunliffe hollered to get Archie's attention, and Archie approached them. Cunliffe introduced Investigator Smith to Archie as "Kim," explaining that she bartended at a local club and wanted to purchase some cocaine. (Investigator Smith was wearing a wire at the time.) "Kim" and Archie shook hands.

When Cunliffe informed Archie that they had $125 to spend on an "eight-ball" of cocaine, Archie indicated that he could sell them "one hundred sixty in bags for one twenty-five." Archie he handed the package of cocaine to Cunliffe, and Investigator Smith gave Archie $125. Cunliffe and Investigator Smith walked back to their unmarked police car and got in. Cunliffe then gave the package-a small Ziploc baggie containing thirty-one smaller baggies of cocaine-to Investigator Smith.

On June 14, 1996, Investigator Smith and Cunliffe went looking for Archie to make another buy. When they encountered Archie at the corner of First and Bay Streets, Archie asked them what they wanted. Investigator Smith replied, "Five powder," meaning powdered cocaine instead of rock or crack cocaine. Archie stated, "Okay," and then walked away, calling to someone on a bicycle, "Go get it." Not wanting to remain in the area much longer, Investigator Smith and Cunliffe called Archie back over and asked what he had on him. Archie replied, "Eleven rock," which Investigator Smith assumed to mean eleven small bags of crack cocaine. Investigator Smith gave

Archie $50 of pre-recorded buy money and took the eleven bags.

Defense counsel moved for a trial order of dismissal on the basis that the indictment charged Archie with sale of cocaine to an undercover New York State Trooper, but the prosecution instead offered evidence that Archie sold cocaine to Cunliffe, the confidential informant. The court summarily denied the motion.

The jury returned a verdict convicting Archie of all four counts of the indictment. Archie was sentenced to four indeterminate terms of ten to twenty years incarceration, all sentences to be served concurrently.

The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed his conviction on November 13, 2000. *People v. Archie*, 277 A.D.2d 1009, 716 N.Y.S.2d 203 (4th Dept. 2000). The New York State Court of Appeals denied leave to appeal on January 10, 2001. *People v. Archie*, 96 N.Y.2d 732, 722 N.Y.S.2d 798, 745 N.E.2d 1021 (2001).

This Federal habeas petition followed. Respondent does not raise non-exhaustion as an affirmative defense, and all of Archie's claims appear to be fully exhausted and properly before this Court. *See* 28 U.S.C. § 2254(b)(1). For the reasons set forth below, the petition is denied.

## DISCUSSION

### *Standard of Review*

To prevail under 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a

decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### *Merits of the Petition*

### Claim 1. Insufficiency of the evidence

Archie contends that in light of the trial court's charge to the jury on the first count of the indictment (*i.e.*, the May 31, 1996 drug sale), the evidence was insufficient to prove guilt beyond a reasonable doubt on that charge. According to Archie, the proof at trial was that the May 31 drug sale occurred between him and the confidential informant, not the state trooper.

The relevant question for this Court on Federal habeas review is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *accord Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir.2002). Thus, a habeas petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir.1997). On habeas review, the court is not permitted to " 'make its own subjective determination of guilt or innocence.' " *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999) (quoting *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)).

■ Although Cunliffe, the informant, asked for the eight-ball of cocaine and took possession of the package from Archie, Investigator Smith testified that she hand-

ed the money to Archie. T.196–97.[1] Investigator Smith and Cunliffe immediately left and got into the undercover police car, at which point Cunliffe turned over the drugs to Officer Smith. T.198. It is clear from the evidence presented that Archie sold the cocaine on May 31 to Cunliffe *and* Officer Smith, who were acting in concert, as a team, to purchase the drugs. Consequently, there was sufficient evidence upon which a rational jury could have found all of the elements of criminal sale of a controlled substance as charged in the first count of the indictment. The Appellate Division's finding that the evidence was sufficient to convict Archie was neither contrary to, nor an unreasonable application of, the relevant federal law.

### Claim 2. Variance of the indictment

██ The Fifth Amendment of the Constitution protects a defendant from being convicted of an offense different from that which was included in the indictment returned by a grand jury. *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (citing *Ex parte Bain,* 121 U.S. 1, 10, 7 S.Ct. 781, 30 L.Ed. 849 (1887) (The Fifth Amendment, providing that "no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury," forbids the making of a change or amendment in the body of an indictment after it has been filed.), *overruled on other grounds, United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)); *accord United States v. Helmsley,* 941 F.2d 71, 89 (2d Cir.1991), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992). "An unconstitutional amendment of the indictment occurs when the charging terms are altered, either literally or constructively, such as when the trial judge instructs the jury. In

contrast, a variance occurs when the charging terms are unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Helmsley,* 941 F.2d at 89 (citing *United States v. Zingaro,* 858 F.2d 94, 98–99 (2d Cir.1988)). Constructive amendments are *per se* violative of the Fifth Amendment, but variances are subject to the harmless error rule and thus are not grounds for reversal without a showing that defendant has been prejudiced. *Id.* (citing *Zingaro,* 858 F.2d at 98; *United States v. Weiss,* 752 F.2d 777, 787 (2d Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985)); *accord United States v. Ansaldi,* 372 F.3d 118, 126–27 (2d Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 364, 160 L.Ed.2d 266 (2004).

██ Here, the charging terms of the indictment were not altered by the prosecution at trial. Archie claims, however, that the proof offered as to the purchaser of the cocaine was materially different than the facts alleged in the indictment. He points out that, with respect to the May 31 drug buy, it was the confidential informant who took possession of the cocaine. The indictment, however, charges Archie with the sale of cocaine to a New York State Trooper.

██ For some reason, the trial court instructed the jury that the identity of the person to whom Archie sold the drugs was an essential element of the crimes charged. This, of course, is not ordinarily the case. New York Penal Law § 220.39(1), the section with which Archie was charged, criminalizes the sale of narcotic drugs, but it mentions nothing whatsoever about the person or persons to whom the defendant sells the drugs. *See* N.Y. Penal Law § 220.39(1). Thus, the identity of the buy-

---

**1.** Citations to "T.____" refer to the trial transcript.

er is irrelevant for the purposes of determining liability under this section.

It is questionable as to whether there was a variance since the proof at trial did not vary materially from the facts alleged in the indictment: as the state court found, the evidence established that the informant acted in concert with the police investigator in consummating the purchases of cocaine. Even if there was a variance, Archie is unable to show prejudice as a result. Because identity of the buyer is not an element of criminal sale under Penal Law § 220.39(1), it was not an affirmative defense to argue that Archie was not culpable because he sold the cocaine to the confidential informant rather than to the undercover police officer. I note that defense counsel certainly did not defend the case on this basis. Because Archie was not prejudiced, any variance that occurred was harmless error under any standard.[2] Therefore, habeas relief is not warranted on this claim.

### Claim 3. Illegality of sentence and vindictiveness in sentencing

Archie contends that the trial court impermissibly considered past uncharged crimes in fixing the term of his sentence. He also contends that the judge sentenced him vindictively for exercising his right to go to trial.

With respect to his vindictive sentencing claim, I note that the difference between the offered sentence (four and one-half to nine years) and the imposed sentence (ten to twenty years) does not make out a claim of actual vindictiveness because the judge never stated or implied that the sentence was based on Archie's refusal of the plea offer. *See Naranjo v. Filion*, 2003 WL 1900867, at *10 (S.D.N.Y. Apr.16, 2003) (denying habeas claim based on disparity between pretrial offer of five to ten years and ultimate sentence of twenty-five to fifty years; such difference did not establish claim of actual vindictiveness because judge never suggested that sentence based on refusal of plea offer). The mere fact that the trial court, following conviction, imposed a high sentence does not, in and of itself, establish "actual vindictiveness." *See id.* (citing, *inter alia*, *Corbitt v. New Jersey*, 439 U.S. 212, 219, 223, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978) ("We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea.... We discern no element of retaliation or vindictiveness against [appellant] for going to trial. There is no suggestion that he was subjected to unwarranted charges. Nor does this record indicate that he was being punished for exercising a constitu-

2. The Second Circuit has settled the question of which harmless error standard applies on habeas review where the state court explicitly conducted a harmless error analysis of the alleged constitutional error. *E.g., Gutierrez v. McGinnis*, 389 F.3d 300, 306 (2d Cir.2004). When a state court expressly engages in harmless error review, the reviewing court must assess whether the state court unreasonably applied the standard in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). However, it remains an open question in this Circuit as to which standard applies where, as here, the state court has not conducted a harmless error analysis, and harmlessness is being consid- ered for the first time on collateral review. In *Gutierrez*, the Second Circuit suggested that the appropriate standard might be the more lenient one set forth in *Brecht v. Abrahamson*, wherein the Supreme Court held that on collateral review, an error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted). The circuit court expressly declined to decide the issue in *Gutierrez*, noting that the facts necessary for resolution of the question were not before it. 389 F.3d at 306 & n. 7.

tional right.... There is no doubt that those homicide defendants who are willing to plead *non vult* may be treated more leniently than those who go to trial, but withholding the possibility of leniency from the latter cannot be equated with impermissible punishment as long as our cases sustaining plea bargaining remain undisturbed."); *Chaffin v. Stynchcombe*, 412 U.S. 17, 31, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); *United States ex rel. Williams v. McMann*, 436 F.2d 103, 106–07 (2d Cir. 1970), *cert. denied*, 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971); *Bailey v. Artuz*, 1995 WL 684057, at *2 (N.D.N.Y. Nov.15, 1995) ("[A] sentencing judge does not show vindictiveness ... by sentencing a defendant who, after withdrawing his plea of guilty to a lesser offense carrying a lower penalty, has then been convicted of a more serious offense to the higher penalty authorized ... [Petitioner] has offered no evidence of vindictive sentencing beyond the fact of the plea bargain offered to him and the actual sentence he received.... Therefore, [petitioner] has not made out a claim of constitutionally impermissible vindictive sentencing.")).

■ Turning to Archie's claim that his sentence was harsh and excessive, I note that a petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir.1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of

habeas corpus.")). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992); *accord Ross v. Gavin*, 101 F.3d 687 (2d Cir.1996) (unpublished opinion).

■ Here, Archie, a second felony offender, was convicted of two counts of criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16(1)) and two counts of criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39(1)). Both of these offenses are class B felonies under New York law. Taking his second felony offender status is taken into consideration, Archie's indeterminate, concurrent sentences of ten to twenty years incarceration did not exceed the maximum sentence authorized for these offenses. *See* N.Y. Penal Law § 70.06(1)(a), (2), (3)(b) ("For [a second felony offender convicted of] a class B felony, the term must be at least nine years and must not exceed twenty-five years[.]"). Therefore, this claim is not cognizable on habeas review.

## CONCLUSION

For the reasons stated above, Booker Archie's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Archie has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED.**