■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SPATINE VEHAP, Appellant. [652 NYS2d 8] —Judgment, Supreme Court, New York County (Mary McGowan Davis, J., at trial; Bonnie Wittner, J., at suppression hearing), rendered March 2, 1994, convicting defendant, after a jury trial, of two counts of criminal possession of a weapon in the third degree, and sentencing him, as a second violent felony offender, to concurrent terms of $3^1/2$ to 7 years, unanimously affirmed.

Defendant's white Jeep with dark-tinted windows and temporary out-of-State license plates was stopped on East Broadway shortly before three in the morning by the arresting officer within moments of the officer receiving a radio transmission indicating that a "male white [who] had fired two shots out the window" of a "white Cherokee Jeep with tinted windows with temporary plates on it" was last seen fleeing south on Broadway from West Houston Street. Contrary to defendant's argument on appeal, the information conveyed by the officers, who originated the radio transmission after a face-to-face encounter with an unidentified informant, was sufficient to provide reasonable suspicion for a stop and frisk of defendant (People v DeJesus, 169 AD2d 521, lv denied 77 NY2d 994; People v Coutin, 168 AD2d 269, affd 78 NY2d 930; People v Castro, 115 AD2d 433, affd 68 NY2d 850). The sending officers had an opportunity to evaluate this man's reliability after he approached them on the street and pointed out the white Jeep, which they then observed proceed through a red light in the direction they then indicated in the radio run. Under the circumstances here, where the sending officers were in the midst of an unrelated assignment arising out of a fire in an apartment building when they were approached by the informant, and where the informant, who was driving a trash hauling truck, was in the course of his appointed rounds, we find the sending officer's failure to ascertain the informant's identity understandable. Furthermore, regardless of whether, as the

receiving officers testified, they were informed that shots had been fired, or, as the sending officer testified, the information transmitted was that a gun was pointed at the informant, it suffices to note that here the reasonable suspicion was enhanced by the informant's report that a weapon had been used in a menacing or threatening manner (*People v Cartagena*, 189 AD2d 67, 71, *lv denied* 81 NY2d 1012).

Once the defendant was properly stopped, the protective search of the driver's area of the Jeep was reasonable under the totality of the circumstances, including defendant's jittery conduct, his repeated refusal to comply with the officer's direction to keep his hands on the roof of the car, his statements that he had friends in the Seventh Precinct and that he had only pointed his belt buckle at the informant, thereby corroborating that an incident had occurred, and his intoxicated or drugged appearance (*see, People v Harris*, 160 AD2d 515, *lv denied* 76 NY2d 789; *contrast, People v Torres*, 74 NY2d 224). As we have explained previously, *Torres* (*supra*), "does not stand for the inflexible proposition that a police officer may never look into a car once a suspect is removed from the vehicle" (*People v Harris*, 160 AD2d, *supra,* at 517). Thus, unlike in *Torres* and other cases where it has been held that the frisk of a defendant outside a vehicle dissipates any concern the police legitimately have for their safety, here the police officers' protective search of the Jeep's interior was justified by a reasonable concern that defendant might retrieve a weapon upon reentry into the Jeep. Here, the defendant's own conduct outside the vehicle heightened rather than diminished the officer's concern for his safety (*contrast, People v Pena*, 155 AD2d 310) and he was justified in believing a weapon was present. In light of the foregoing, we need not consider whether the discovery of the small amount of marijuana in defendant's pocket incident to the frisk justified the search of the car.

Defendant's alternative contention, that his co-defendant's trial testimony constituted improper evidence of uncharged crimes, lacks merit. Moreover, in light of the limiting instructions given by the trial court upon receipt of the testimony and in its final instructions, the admission of this evidence was not unduly prejudicial (*People v Till*, 87 NY2d 835). Concur—Sullivan, J. P., Rosenberger, Kupferman, Tom and Mazzarelli, JJ.